This is our first case of the morning, 415-0216, City of Atlanta v. Armstrong, for the appellant Mr. Herman, for the affilee Ms. Petroli. You may proceed. Thank you, your honor. Good morning, your honor, counsel. The appellant is before this court today seeking the judgment of the circuit court to be vacated and the fine imposed by the circuit clerk to be vacated, your honors. The issues and facts before you today are very narrow as they deal with the application and interpretation of the laws of the ordinances of the City of Atlanta. The appellant is seeking to reverse the trial court for the following reasons, your honors. The plain wording of the general penalty provisions in the City of Atlanta do not apply by their express terms to these proceedings. The general provision being applied by the court to this case and the lack of expediting, there's no expedition provision in the unsafe building ordinance in the City of Atlanta which then violates Dillon's rule. If the fine does apply under the general penalties provisions, the trial court should have granted trial counsel's request for a hearing on the issue of the imposition of fines and let them develop a record and present argument as to why trial counsel believed fines did not apply in this case. Finally, there's an additional fine imposed. It was under the Unified Code of Corrections and we argued that fine is not applicable to this case. And if it was applicable, the court should have held a hearing pursuant to case law to impose that fine and allow all parties to participate in that hearing. And they should have allowed a hearing to allow the trial counsel to present what was called good cause under that statute to seek revocation of that fine. And finally, there's an argument that we're presenting that the fines are in violation of the Constitution under the excess fines provision of the Eighth Amendment. If I could, I'd like to set forth just a quick timeline for the court that we think is appropriate for the court to realize. The City of Atlanta, they were notified of an alleged violation of an unsafe building provision by a neighbor who was looking at trying to buy the property. In August of 2013, without inspecting the building, they sent a notice of violation pursuant to their unsafe building ordinance. Fifteen days passed, nothing happened. Three months later, they filed a complaint in December of 2013 citing their unsafe building ordinance as the basis of their complaint. They don't seek demolition and repair, even though their ordinance mandates that they should and the Municipal Code mandates that they should. Instead, they seek fines. And they seek fines for a period of one year in addition to seeking fines for the day that the initial alleged violation came to their attention. They never make any repair or demolition of the property. They wait until May 2014, five months after filing their complaint, eight months after sending out the notice. Then they send a structural engineer to the property in May of 2014 to inspect the property, which is our position they're mandated to do under their own ordinance. And after they do that, there's some pre-trial and trial dates that are continued by agreement. There's some continued by the court on availability. And finally, in December of 2014, judgment is entered against my client. There's fines in the amount of $112,750. They found that he was in violation for 451 days. At that time, bless you, at that time there was a request for a hearing on fines that was denied by the trial court. So from the beginning of the notice all the way to the entry of the order, there were 16 months that passed. And that becomes relevant in our mind because the Municipal Code, the state statute, says these should be expedited. And the case law is clear that these should be given precedent over all other matters. Our first argument is the general application of the General Provisions Ordinance by the City of Atlanta. It's our position that it doesn't apply by its own terms. There's a clause in the very beginning that says, except as otherwise provided. There are ten nuisances set forth in the City of Atlanta's Municipal Ordinances. One has a specific remedy if you violate it, and that is the Unsafe Building Ordinance. It's our position that except as otherwise provided is a limitation on the municipality that says you shall do this unless it's otherwise provided. But Counsel, doesn't that relate to the fine which the Unsafe Building Ordinance doesn't speak of a fine? Well, Your Honor, there's a lot of difference between fine and penalty. I think it's under General Penalty Provisions and it's a penalty. It's our position that this Unsafe Building Ordinance, as well as the Unsafe Municipal Code section, does have a penalty. No, no, I said fine. When we look at the General Penalty Provision, it talks about except as otherwise provided, any person convicted of a violation of any section of this code shall be fined in the sum of, and then it goes on, whereas the Unsafe Building Ordinance does not speak to a fine. It doesn't use any fine language. It says failure to comply, Your Honor. It sets forth a specific remedy for failure to comply with that ordinance. It's our position that it's under the General Penalty Provision, and it's a penalty or fine. Because it says General Penalty, that's what's under the code, and it says they shall be fined in that amount. It doesn't say they shall be penalized, but the heading says General Penalty Provision. And it's our position that the ordinance does provide for a penalty, the utmost penalty. It says the government can go to the trial court and say, I want to take control of your building, your property. But it does not provide for a fine, would you agree? No, I agree it doesn't, because I don't think a fine is applicable in this case at all. Because it provides for other remedies if you violate the Unsafe Building Ordinance. And that remedy is specifically set forth in the code. In fact, their code is stricter than the state statute. The state statute says they may go and seek relief, but if they do, there are certain things they have to do if they initiate that cause of action. And their own code says they shall. And their code says shall, and their code is mandatory, so we don't have to argue about mandatory versus discretionary here. And what's the remedy if they don't? Their remedy is they go to court and they seize my guy's property. No, no, no. I'm saying, what's your client's remedy if they don't? If they don't what? Well, you're saying it says they shall. Yes. If they didn't do that, if they don't comply with their statute, what's the remedy for your client? If they don't comply with the state statute, they don't comply with their own ordinance, their ordinance that mandates that they take certain action, well, the remedy is that they should not then be able to amass a windfall by not acting pursuant to their own mandates. They chose to impose on themselves by passing this ordinance that says you shall do this when the state statute says you may do this. They impose that on themselves, and when they don't act, they can't turn a blind eye to their own law, a blind eye to the statute, and say we can choose whatever choice we want. These are specific as to these individual causes of action. The only one out of ten in the whole code that has any specific remedy for violating. So what we're saying is the remedy, except as otherwise provided, if you want to call it a fine, penalty, or remedy, we're saying it's a penalty under their code, but they use the word fined amount. They take the property. They take possession and control with a court order, and they do what they want with it. They can deny you the property. They can demolish it, or they choose how to repair it, to what extent to repair it, and then they can recover cost for that and lien your property. So they take possession of your property as the remedy. That's the penalty my client faces instead of, and that's what they're mandated to do under their own ordinances. And because of that specific remedy, they have to follow their own law, except as otherwise provided. Now, I see where the court's going with fine. I guess the remedy is they shouldn't be able to just ring up the bell for 451 days. If they bring an action to demolish and repair and seek fines until they get an order and demolish and repair, I think that's readable, or that joint fine along with your action that you're mandated to take. You just can't say that's statute. So you're saying since they sat on it, they can't get the fine, but if they hadn't sat on it, they could get the fine? No, I'd say it's not applicable at all, but you're making a distinction between fine and penalty. And I'm saying to read it consistently. I'm just reading the language of the statute. To read it consistently, and you're trying to read all these things consistently so one is not found inapplicable to the other. It's our position clearly, except otherwise provided. It's otherwise provided specifically in state statute and the municipal code that if you fail to comply with unsafe building ordinance, this is what you're supposed to do. And you're supposed to do it in an expedited fashion pursuant to the municipal code. 451 days is not. You say the general penalty provides a fine and it should be imposed. So if that's the case, then they can't just turn a blind eye to the code and to the statute. They need to do both. If they want a fine, my guy, they have to comply with their own law and then seek an order to repair and demolish and do that. The purpose of this whole statutory scheme is to protect the health, safety, and welfare of the public. You see from the record here, they're worried about the building falling. So worried that they waited until eight months after sending a notice to get a structural engineer in there. But that's what the theory is, that they're protecting the public. So if you have an expedited proceeding to protect the public, I think the case I'm looking for is the Peru case. It says it needs to be demolished with resolute speed. They want to solve this problem. That's why it's mandated that they need to act. So if you think the fine applies, my argument is it can only apply until they seek demolition. They can't ignore their own obligations under the ordinance and the state statute, which gives them the authorization to do this, and then get a windfall of 451 days. If they're going to do it, they've got to do it both at the same time. They just can't ignore the law and say I'm going to fine you and not follow our own ordinance and state law. It's important to note they bring their cause of action under their building ordinance. Their unsafe building ordinance says if you fail to comply, Your Honor, this is the remedy. The remedy that they shall seek is repair or demolition. We think fines don't apply. If you think fines apply, then they only get it the reasonable time it takes to get a court order to get a repair or demolition, and those fines go for that time period. They're just not open-ended. They can't sit on it, not follow the law and seek fines and ignore their obligations under the law as to repair or demolish. And that's part of the problem that we have here is we weren't allowed at the trial court to present arguments as to fines. But how does your client's obligation to put the building in a safe condition or to demolish it, how does that play into the analysis here? Oh, Your Honor, he didn't. And what happened is he tried to negotiate with the city, is my understanding, for the record. The record is kind of sparse. I wasn't trial counsel. There's no transcripts, but it's sparse as to going back and forth. I think they tried to work together and get it to work, and at the end they found him in violation after they waited the time period until May of 2014 to inspect. But it's not that.  The city's obligation under their ordinance they imposed on themselves, mandatory shall, they shall seek an order from the circuit court and request demolition or repair. They shall do that. They did not do that. Trial counsel said they never asked for it. I went to hearing in the trial. He sent a motion. He said, I think, they never asked for demolition and repair. All they asked for is fines. Trial counsel for the city said we can do whatever. We can do either. We have an alternate choice. They don't have a choice. The law says you have to do this. Their own law. They imposed it on themselves. Additionally, the municipal code says that you may do it, but once you do it, you've got to follow these rules. So if you don't follow these rules, then you're in violation of the state code as well, and they're actions unauthorized in violation of Dillon's rule of seeking fines. Your argument is you think they can do both, or maybe you think they can do it alternatively. I don't know, but what I'm getting is why not fines? Well, why not fines? Because it's except otherwise provided, and they can't ignore their obligations under the law to get fines. If they did both, and they said it took 35 days, 45 days to get the order, and they got fines during that time, that's palatable because they did what they were supposed to do under the law. They didn't turn a blind eye to their legal obligations after my client failed to act. This is what they say they're mandated to do after my client fails to act. It's not my client did this, did that. This is on them. They impose that obligation on themselves once my client fails to act within 15 days. And additionally, it's imposed upon them by the municipal code at the state level once they make the initiative to file under this. It says you may file, but when you do, you shall do these things. And that shall is mandatory as well because it impacts people's rights, and so it's not directive, it's mandatory. And there's case law that says when there's conduct that affects someone's rights and substantial rights, which are health and welfare and safety of the people and my client's property interest in rights and its property and ability to do things, it's not discretionary, it's mandatory. The trial court denied my client's counsel's request for a hearing, Your Honor. We think they said they didn't have discretion to modify the amount per day. We believe under the Savada case and other case law that the court does have discretion to hear evidence regarding the number of days they're in violation. Your Honor, in this case, the city failed to comply with three of their own ordinances. The first one is the unsafe building ordinance that says you shall file an action if my client doesn't act within those 15 days for repair or demolition. Their other ordinance says they have an obligation to abate, they shall abate. And their other ordinance says they shall investigate. Well, the record's clear they did not investigate until May of 2014. They don't know that the violation existed until they investigated under their own required ordinance when they sent in a structural engineer. Those issues were, and that's eight months after the notice, five months after the filing. Your Honor, there's nothing in the record to show that they investigated prior to giving us notice and prior to filing the complaint. It's the position of the appellant here that we should be able to present that evidence to the trial court and argue that a time period of eight months doesn't count until they've established that there is actually a violation. Additionally, they're required to act. They're required to act. Our position is you can't get fees when there's a specific remedy set forth in the municipal code and there's a specific remedy set forth in the municipal code. So if you're getting fees instead of acting pursuant to the municipal code, it's our position, if the municipal code says this is what you do when you fail to violate or you violate this section, then you're mandated as a municipality to follow that. They're a non-home rule municipality. The statute trumps, and it says if you violate and you choose to do this, you may file, and if you choose to do this, you've got to follow these things. They didn't do that, Your Honor. We also weren't able to develop and argue our constitutional challenges. It was in a post-trial motion, Your Honor, but that was denied as well. Additionally, the complaint, the two-count complaint only sought fees for 365 days, and there was no opportunity to present on the record the abatement of the unified code of corrections fee fine. Your Honor, in this case, there was an additional fine of about $38,000 assessed to my client, and it's our position that that is not applicable in this case. First of all, it's a fine under the unified code of corrections. The first sentence says it applies to traffic and criminal offenses. We believe if you read that, the second sentence is a qualification of the first sentence. It does say in ordinance cases, but there's ordinance cases where you get possession of pot, DUI, speeding. There's other criminal-type ordinance cases. This is not what we have here, Your Honor. There's no conviction of judgment here, no order of supervision, no plea of guilty, no entry of guilty. It's just not a criminal proceeding or a criminal-type proceeding here. This court, the Fourth District, has referred to this as a traffic criminal surcharge. The Supreme Court has defined it as the same. This case is civil-informed. The Code of Civil Procedure applies. It was a preponderance of the evidence, and there's no possibility of incarceration for a violation. I have two questions. Yes, Your Honor. What does Dillon's rule have to do with this? Your Honor, it's our position that... I know what your position is, but what does it have to do with what happened in the trial court? There's no expedited process. 450... Did you raise... I mean your client. Trial counsel made an assertion of that, and he... He made an assertion of the Dillon's rule. Well, he made an assertion that there was not... it wasn't expedited. And we asked for a hearing to determine fees, and he was denied the ability to set forth that argument as our position. How about the failure to comply with mandatory ordinances? He said... I don't remember the exact term, but essentially he said, why don't they ask him to demolish and repair this? So that's the assertion of an affirmative defense. Well, I think it goes to the imposition of the amount of fees. I think it's a fine... Not fees, fine, Your Honor. I apologize, I misspoke. It goes to the imposition of the fines imposed by the court. He didn't know there's first a finding of liability, and then he wanted a hearing on the issue of fines. I asked for it, made some assertions. I think he preserved the issues, and he didn't preserve the exact arguments, but I don't think under the law he has to. He just preserves issues, not arguments. And he asked for it, he asked for a hearing to present that, and the court said no. But there is... And at the hearing, he would have said... He would have been able to present an argument. You didn't follow your own mandatory ordinances, so I get a pass on the fines the court thought it lawfully imposed. I can't second guess. All I can look at is the record. He said they never asked for a violation to... Excuse me, in order to demolish or to repair. This should have been done. They didn't inspect it until May. He said they didn't... It wasn't expedited. It took too long. What do you think about that being raised in a civil case? As evidence of asserting an affirmative defense. Isn't this like an affirmative defense? Isn't it an affirmative defense as to what ought to happen to me because you found I've done something wrong? It could be styled as that, but I think that in his position, what he did was he said, hey, I want a hearing on this because there's problems with the fines. And until there's an imposition of fines... There's no issue as to fines. He asserted that they weren't in violation, that they hadn't proven it. If you go back, the city initially used a construction manager as their basis, a construction report from someone who's not even a certified structural engineer for their basis that was done for someone else. The city didn't even inspect it until May after they filed the complaint. And his assertion was, I believe, could he have done it? Absolutely. 20-20 hindsight, should he have done it? Maybe. I don't know, but Monday morning quarterback, it would have been a lot cleaner if he had. But I don't think that takes anything away from the court's ability to say that these weren't preserved in the record as to these arguments. Because you can't say when the statute says you have to do something and seek a demolition or a remodel and their own ordinance says you have to do it, you just ignore that and go with some general provision. Your Honor, I see my time is up. Let's finish this. With the general provision and ignore it. You just can't ignore the law and try to get a windfall. Now, the problem is it's the windfall. Justice Holderwhite was saying, well, could there be fines? We don't think there is, but if there is, it shouldn't be the whole time period, Your Honor. And it shouldn't be these fines imposed under the Unified Code of Corrections. We should have been able to... And remember, the Unified Code of Corrections, it came up after the fact. It was entered. The judge said, I don't know anything about it. It wasn't mine. They said it was the clerk's. So he didn't even have an opportunity to argue that. And he said, hey, I want a hearing on that. And they said, no. That was the first he heard about it. And then they tried to ratify it through some order to pay, but the order to pay is not the entry of the order. That's order to pay a judgment that's already been entered. And that's key because under case law, it's under People v. Warren, you need to have a participation in that, Your Honor. And that's what the court says. Your Honor, excessive fines I didn't get to. I apologize to the court. We'll just stand on our briefs. Your Honor, for the reasons set forth today in oral argument in our briefs, we ask that the court be reversed. Thank you. Thank you. You'll have some time on rebuttal. Good morning. May it please the court. Justice Kinect, Justice Pope, Justice Holder-White, my name's Lisa Petrilli, and I appear before you on behalf of the city of Atlanta. The defendant in this case claims that this admits that ordinances should be read together where they're not in conflict, yet continually refuses to acknowledge that the general penalty provision and the unsafe building ordinance can and should be read together and that they do not conflict with each other. The plain language of each ordinance provides that the general penalties provision will apply to a violation of any section of the code for which a fine is not already imposed within that section. It is undisputed that the unsafe building ordinance and nuisance ordinances themselves do not provide for a specific fine. Those fines then would be assessed against individuals violating those sections of the codes in accordance with the general penalty provision. That penalty provision, if we want to talk about the word shall and what it means, the general penalty provision says that except as otherwise provided, any person convicted of a violation of any section of this code shall be fined in the sum of not less than $250 nor more than $500. Defendant wants us to impose mandatory action on the city in accordance with the unsafe building ordinance because of the word shall, yet ignores that same provision in the general penalty ordinance. Now, the unsafe building ordinance does provide certain things that the city must do if the city determines that it is going to demolish or repair the defendant's property and that is to protect the defendant in this case and his interest in the property. And yes, there are certain things that are set forth in the ordinance as well as the Illinois Municipal Code that provide that there are things that shall be done if a city decides or a municipality decides it's going to or wants to demolish somebody's property. That was not the case here and there is no reason why that section in Dillon's rule would prevent the city in this case from seeking a fine for violation of these sections. Counsel, it seems like you're reading something more into section 7-1-2-5D. You talk about if they decide to demolish or repair. Well, the statute talks about if after 15 days subsequent to the giving of the notice. So was the notice given here? There was a notice given. And 15 days did pass. And was there this request made to the council directing the city attorney to apply on behalf of the city to the court to authorize the city to demolish or repair? The city did not seek to do that because the city was working with the defendant at that time in an attempt to allow the defendant to repair the property himself. But can you point me to in this section of the statute where it says, as you're indicating, if the city decides to do that? I mean, it seems pretty clear as counsel was pointing out there's a lot of shell going on in this section. Well, the fact that the city has certain requirements that would apply to the demolition doesn't take away from the fact that the city can assess fines for violation of Section A of that statute. I guess what I'm asking is read to me, point me to the section of the code that talks about the city can make this choice as to whether or not to seek to demolish or repair once they have given this notice. I just don't see that. Well, and it's not set forth that way. It's two separate statutes that we're trying to argue should be read together and not separately. The first section of the Unsafe Building Ordinance is a prohibition. It prohibits the owner of a building to allow a building to get into such a condition that it's determined to be unsafe. The violation of that section alone warrants the imposition of fines and of the general penalty provision. So anytime that an owner violates that section of the Unsafe Building Ordinance, there is in fact a violation that can be punishable by fines, which are to deter. There is also the remaining portion of that does provide for demolition. However, in this case... But that's for the owner. Pardon? We're talking about the Unsafe Building Ordinance. It talks about notifying the owner and directing the owner to put the building in a safe condition or demolish it. Whereas the section of the code that talks about giving the notice and then asking that the city attorney pursue action, that talks about the city's obligation to demolish or repair. Correct? It does. Although the intent of that, if you read it in connection with the Illinois Municipal Code section of that, which it tracks almost identically, the intent of that is to provide for a mechanism to protect the defendant's property in providing that the city has to do certain things before it tears it down. Could it have been better written? Certainly. We wouldn't be here today had it, if it were. So are you saying the city was under no obligation to demolish or repair based on the notice being given? That's correct. The intent of this was to provide protection to the defendant in that the city wouldn't just go and tear down his property without doing certain things and having certain findings. And again, that tracks with the intent and the language of the Illinois Municipal Code, which is virtually identical to this section. And we think that the intent of that was not to impose a mandatory obligation on the city to tear down every building that it deemed unsafe, even where it's trying to work with the defendant to try and repair it, but that it is there to protect the defendant from having his property torn down where certain things haven't first occurred, certain protections. And that's the way that we're asking for this provision to be interpreted. I think you're suggesting that the city gave notice that this was a bad thing. That's correct. And after this notice is given, at some point, though it would be unclear,  but maybe if it's not, let me know, this is a bad thing. The city is talking to the defendant. And they're talking about what are you going to do? What are we going to do? And sometime during that interval, the defendant did try to make some repairs. And sometime during that interval, the city put barricades around, asserting that there was a fear of a falling wall or falling brick. Was this a sidewalk or a street that the barricades were around? I believe it was a sidewalk. And that you would assert that negotiations continued? Certainly. Negotiations continued. And I think defendants council indicated that was going on all the way through May of the following year. That's correct. And to address council's assertion that there was no inspection of the building prior to May, that's not accurate. The city didn't hire a separate person to come out and individually assess that after the defendant had made some repairs. There had been multiple inspections, including at least two inspections by the defendant's own inspector, all of which found that the building was unsafe and that condition existed and continued prior to July 7th of 2013 and all the way up through the December 5th order in this case. And that's actually, it's not disputed that that property was unsafe for that entire amount of time. And it's also not in dispute that or I think that the defendant admitted that the building was open to the elements and rodents and people during this period of time. And actually that admission was made by the defendant following his attempts to remediate it and in fact an agreed order where he agreed that he would remediate and bring the property into a condition that was compliant with the Unsafe Buildings Act. And then he later admitted that no, he hadn't done that and the building was in fact still open. And so council, my question is at some point negotiations broke down and it was apparent there was not going to be an agreement, right? Yes, that is true. So what was the obligation of the city at that point? At that point this case had already been pending is my understanding and so it proceeded to request the fines that it sought for the continued violation at that point in time. So the city at that point hadn't requested and still hasn't requested demolition of the property, hasn't sought demolition of the property. And I don't know that, I don't believe that negotiations completely broke down. I think there was still throughout the entire litigation some effort because I believe that agreed order that was entered where he would agree that he would close the building up to the elements and get it into a safe condition was just prior to the final, the December hearing and that it occurred sometime in the fall of 2004. So has the city attorney ever applied for an order authorizing the city to demolish or repair or to cause the demolition or repair of the building? I don't believe that that has occurred. To address that issue in connection with the Dillon's Rule claim, I don't think that there is a Dillon's Rule issue in this case in that the Illinois Municipal Code and the ordinances in this don't conflict. There is no issue of preemption because both of them can be read together and in fact as I stated earlier, the ordinances are virtually identical. So this whole claim that Dillon's Rule somehow required an expedited proceeding is not the case where we weren't proceeding to demolish that property. Had we proceeded to seek demolition, certainly there were requirements that we would have had to have met. And again, that doesn't prohibit the imposition of fines under a general penalties provision which are also expressly permitted by the Illinois Municipal Code. With regard to the claim that these fines are excessive, the defendant is aggregating the fines in this case and then asking that the total be found excessive. And that position has been consistently defeated in the appellate courts. There is a statute, and there's no dispute that this statute, or I'm sorry, that this ordinance exists that provides for each day that an offense The continuing violation. Right. There is a continuing violation for each day that this offense is continued to allow to remain. And so there is no dispute that there is that provision. And where there is that particular provision, then it's not a windfall because the aggregate amount is more than the defendant wants to pay. In this case, if you look at the individual penalties that were assessed for each individual violation, the court assessed the minimum. The minimum provided by the general penalties provision. And I think that's important to note because Supreme Court Rule 579 imposes an obligation on the court to impose the minimum fine that's permitted under the statute. And this statute, I'm sorry, this ordinance provides that the minimum fine is not less than $250 nor more than $500. The court assessed the minimum fine. So failing to hold another hearing as to whether or not that fine was excessive was unnecessary. The court was accurate when it stated that it wasn't within his discretion to reduce the per day fine. Now, what the defendant could be arguing and may claim that the defendant should have been allowed to present additional evidence as to the number of violations, that being the number of days that this property was allowed to remain in this condition by the defendant. However, if you look at Count 2 of the complaint, Count 2 alleges a per day violation. Had the defendant wanted to challenge whether or not a violation had occurred on each of those days, the defendant had that opportunity to at the trial. And in fact, if you look at the report, there is significant testimony as to the time frames of when this, the condition of the property, as to what the condition of the property was on certain dates. And that was the plaintiff showing that the property had been unsafe from prior to July 7th all the way through the date of the hearing. The defendant didn't dispute that and in fact admitted it multiple times during the proceedings that the property was in an unsafe condition. And the fact that the defendant didn't raise an issue as to whether or not the violations were occurring during that time, that should have been done at the trial. That was what the trial was about, was whether or not the defendant had committed the initial violation and then a violation for every day thereafter up to the date of the order. Failing to hold another hearing on the very issue that was before the court at the trial doesn't deprive the defendant of any rights, which he should have and could have asserted at the trial. The defendant also in this case seems to place all of these burdens on the city in saying that the city gets a windfall for all of these days that the defendant permitted the condition, the property to remain in the condition it was. That seems to indicate that the defendant had no control over this whatsoever and the city just got in judgment for this amount and there was nothing that the defendant could have done about it. But the defendant could have done something about it. The defendant could have brought the building into compliance with the Unsafe Building Ordinance. That ordinance imposes a duty on a landowner to keep a building from becoming a nuisance and in this case at any time during the proceedings and at any day leading up to the judgment the plaintiff could have taken the steps necessary to get the building into compliance with the ordinance and had the defendant done that, the fines would have cut off but the defendant didn't do that at all. The building at no time complied with the ordinance and was unsafe. Assume for the moment that we are at a status quo because I'm not interested in what has happened since. Just assume nothing has happened since. Would the city be able to and if the city prevailed, would the city be able to collect a fine and then start a new action designed to demolish the building? I believe the city would be permitted to do that. Would the city be permitted to file a new claim as a nuisance and collect additional fines? I believe that under the way that the statutes are read, that yes the city would be permitted to claim a another continuing violation for the time that it could show that those violations had occurred. With regard to the claim that this violates the Eighth Amendment, the defendant relies a lot in its brief on the case Bahakishan, I believe. I'm not sure that I'm pronouncing that right. But in that case if you recall, it was the fine was found to be excessive because there was just one single violation which resulted in essentially a penalty of $357,000. In this case, it's distinguishable and more akin to the Express Valet case where each day was a separate violation. And so to aggregate those into one fine is misleading. And reliance upon that case in which it was just one violation is not proper here. With regard to the additional penalties imposed by the court, clearly the circuit court was authorized to impose those additional penalties. The statute, Section 5-9-1 permits those additional fines to be added on in cases such as this ordinance violation case. In fact, the court did in two separate orders dated December 12 and then also on May 5, 2015 order the additional penalty. As such, we would assert that that additional penalty is valid. In conclusion, the Plaintiff's Unsafe Building Ordinance doesn't conflict with the application of the general penalty provision, nor does it conflict with the Illinois Municipal Code. The number of violations and did not violate the defendant's Eighth Amendment rights to be free from excessive penalties as the fines should not have been aggregated. We believe that the circuit court's orders are valid and request that this court affirm the lower court's orders. Thank you. Thank you. Your Honors, first, the general penalty provision does not read into as they read it, except if a fine is otherwise provided. It doesn't say that. It says except as otherwise provided. We believe it's otherwise provided in the Unsafe Building Ordinance. They go through all of these issues and nuances of the... and it's not... we're not putting this burden on the city. We say the city put it on itself by enacting the ordinance that says, once my guy failed to act, the city shall do these things. The city can't ignore the law. They've got to follow their own mandatory ordinances and the Municipal Code. At best, as Justice Holderwhite was talking about, they have a dual obligation to seek a fine while they're also seeking a remedy that's allowed by... the only remedy allowed by law under the Municipal Code and the mandated remedy under their own imposed ordinance. So if they're going to seek a fine and I like that they say, well, we're talking. It goes for my client as well. We're talking. We're trying to remedy it. Why do they get the pass on their legal obligation if we don't get the pass? It doesn't... it's a non-equal application of the law here. If we... they could have done exactly what was mandated and then stayed the order. They could have done exactly what was mandated, worked out a deal and said, hey, the law says we have to do this. We're doing it. We're going to get the order, but we're going to stay our order to demolish or stay our order to repair while we negotiate. They never do that. They say we're negotiating the whole time. They were. And then at the end they stick them for negotiating trying to work it out for 451 days. That's a windfall because they turn the blind's eye to their other obligations. It's not imposing an obligation on the city. The law clearly imposes it on my client first. If my client fails, then it is imposed on the city. It's imposed on the city because they want to protect the health, safety, and welfare of their... they put barricades around it because they didn't want to fall and hurt people. That's the whole basis of this whole unsafe billing ordinance was to protect the public. To protect their citizens. So much so they can take our property. They're just not above the law, Your Honor. There are... and as to the reports, there's a construction person that is not a structural engineer who reports to the city and then their obligation to the city says when any nuisance shall be reported investigated or determined by the police, fire, health, or billing officer or inspector, notice shall be sent. None of that happened in this case. On top of it, our expert said it could be just aesthetics. We don't know if that appeared out at the end. I don't think it's in the record when we actually repaired the building. That's what it was. It's built out and our structural engineer says that in his report. Not until the city's May 2014 structural engineer report says, hey, this is bad. Structural engineer reports are important because it tells you what's going on. If it doesn't violate Dillon's law, it violates the spirit of Dillon's law. You can't say expedite these and then hold on 451 days negotiating and stick it to my guy at the end. It just doesn't smell right. It doesn't smell right when it's the obligation of the city to rectify it for the safety of their own citizens. They enacted the law and they imposed it. It's not the same as the municipal. They imposed a stricter requirement on themselves. They said shall do, which is mandatory. So they thought it was so important. They imposed a stricter requirement on themselves than the municipal code does, Your Honor. They simply can't ignore it and take alternate remedies here because it's not authorized. Does the court have any other questions? We do not. Thank you, Your Honor. We ask for you to record three verses. We'll take this matter into advisement and await the readiness of the next case.